# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JOLEE AL-VILLAR,

      Plaintiff,

vs.                                            No. CIV 12-0896 JB/CG

MICHAEL B. DONLEY, Secretary of
United States Air Force; DR. THOMAS
E. BRETZ, JR., Air Force Research
Laboratory Supervisor,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION</u>

**THIS MATTER** comes before the Court on: (i) the Magistrate Judge's Analysis and Recommended Disposition, filed October 18, 2012 (Doc. 12)("ARD"); and (ii) the Plaintiff's Right to Request No Court Fees, Court Costs, or Other Security, filed August 23, 2012 (Doc. 2). The primary issues are: (i) whether the Court should permit Plaintiff Jolee Al-Villar, who is proceeding pro se, to prosecute her case without paying court costs or other fees under 42 U.S.C. § 2000e-5(f)(1); and (ii) whether denial of a motion to commence a lawsuit without paying court costs or other fees under 42 U.S.C. § 2000e-5(f)(1) of Title VII of the Civil Rights Act of 1964, which provides that "[u]pon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security," requires the Court to dismiss the lawsuit.  The Court will adopt the ARD, which recommends the Court deny Al-Villar's motion and order her to pay court costs and fees.  A district court must dismiss the case when the court denies a motion to proceed in forma pauperis under 28 U.S.C. § 1915 for,

among other reasons, finding that the movant's affirmation of poverty is untrue.   See 28 U.S.C. § 1915(e)(2)(A).   Because courts have not required a plaintiff to show or allege poverty when requesting a court-appointed attorney under 42 U.S.C. § 2000e-5(f)(1), thus treating the inquiry under this section differently from a request for a court-appointed attorney under 28 U.S.C. § 1915(e)(1), the Court concludes that the analysis of a plaintiff's request to proceed without paying court costs and fees under each provision should also be distinct.   Given, therefore, that 42 U.S.C. § 2000e-5(f)(1) does not have language analogous to 28 U.S.C. § 1915(e)'s language requiring a court to dismiss a case when it denies a motion, the Court concludes that denial of a motion to commence a lawsuit without paying court costs or other fees, when brought under 42 U.S.C. § 2000e-5(f)(1), does not require dismissal of the case if the plaintiff does not first pay the court costs and fees and is not alleging poverty as the basis for so proceeding.   Accordingly, the Court adopts the portion of the ARD which recommends that the Court order Al-Villar to pay the filing fees and does not recommend dismissing the case.

## PROCEDURAL BACKGROUND

Al-Villar filed a Complaint alleging employment discrimination and retaliation, because she is a transgendered woman, by her former supervisors at the Air Force Research Laboratory located in Albuquerque, New Mexico. See Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 at 2, filed August 20, 2012 (Doc. 1)("Complaint").   Al-Villar makes claims under the Equal Pay Act, and, although she alleges jurisdiction only under 28 U.S.C. § 1343(3) and § 1983, she mentions "Discrimination Title VII" in the body of her Complaint.   See Complaint at 2.   After Al-Villar filed documents entitled "Right to Request Counsel," filed August 20, 2012 (Doc. 3), and "Right to Request No Court Fees, Court Costs, or Other Security," filed August 20, 2012

(Doc. 4), the Honorable Carmen E. Garza, United States Magistrate Judge, construed them as motions, and issued an Order to Show Cause, filed August 23, 2012 (Doc. 7), requiring the Al-Villar to submit a financial affidavit that sets out her monthly income and expenses.   See Order To Show Cause at 1.   Al-Villar complied with the Order and submitted a financial affidavit.   See Response to Order to Show Cause, filed August 30, 2012 (Doc. 8).   Based on the language in the Al-Villar's requests and her citation to Title VII in the body of her Complaint, Judge Garza construed Al-Villar's requests as ones brought pursuant to 42 U.S.C. § 2000e-5(f)(1) of Title VII of the Civil Rights Act of 1964.   Judge Garza subsequently entered an order denying Al-Villar's request for appointment of counsel, rejecting Al-Villar's contention that she can not afford counsel and finding, after a review of the financial affidavit, that the "Plaintiff has the financial ability to afford counsel, especially given the willingness of most civil-rights attorneys in this District to represent clients who have meritorious cases on a contingency-fee basis."   Order Denying Motion to Appoint Counsel at 6-7, filed October 18, 2012 (Doc. 11).

Judge Garza also prepared an ARD on Al-Villar's request to proceed without paying costs and fees.   See ARD at 2.   Judge Garza, in the ARD, noted:

> The Tenth Circuit has held that an order denying a motion to proceed without paying fees and costs brought under 28 U.S.C. § 1915 is dispositive under Fed. R. Civ. P. 72(b) and cannot be issued by a magistrate judge, see Lister v. Dep't of Treasury, 408 F.3d 1309, 1312 (10th Cir. 2005); Trujillo v. Williams, 465 F.3d 1210, 1217 n. 5 (10th Cir. 2006) (noting that dismissal under § 1915(e) of suits filed without prepayment of filing fees by a plaintiff who is not actually indigent is mandatory).   There is no similar statutory requirement that a complaint filed by a Title VII plaintiff who files the complaint without prepaying filing fees, but whose motion to proceed without paying filing fees brought under 42 U.S.C. § 2000e-5(f)(1) is denied, must also be mandatorily dismissed, thus an order denying the request does not appear to be dispositive.   I have found no controlling or persuasive precedent that prohibits a magistrate judge from denying a  motion to proceed without paying costs and fees brought under 42 U.S.C. § 2000e-5(f)(1).

But because the requests and analysis are similar, I have concluded that, instead of issuing an order denying such permission in this case, I should file a report and recommendation for the district judge's review.

ARD at 1-2 n.2.[1]   Citing and analyzing relevant legal authority, Judge Garza concluded that "the proper inquiry to determine whether the Court should grant permission for Al-Villar to proceed without paying her costs and filing fees is whether she can pay for those fees and still meet her reasonable daily expenses for support."   ARD at 3-5.   Based upon her review of the financial affidavit that Al-Villar submitted, Judge Garza concluded that Al-Villar, who receives "$3070/month in retirement benefits and $397/month in unemployment benefits," and has "almost $5000 in her checking/savings accounts and owns her own home worth $250,000 and a car worth $15,000 (with no automobile loan)," has "a steady stream of income that is more than enough to cover her monthly expenses for a fairly high standard of living, and there is plenty of money in her checking account to pay for the filing fees."   ARD at 4-5.   Judge Garza recommended that the Court deny Al-Villar's request for permission to proceed without paying filing fees and costs, <u>see</u> ARD at 4-5, and informed Al-Villar that she had fourteen days to object to the analysis and recommendation, <u>see</u> ARD at 1 n.1.   Judge Garza did not make a finding anywhere in her ARD that, under § 1915(e)(2)(A), any "allegation of poverty is untrue." 28 U.S.C. § 1915(e)(2)(A). <u>See generally</u> ARD at 1-5.

Al-Villar misconstrued the ARD as an "Order denying motion to proceed under 28 USC § 1915"; filed no objections to the ARD; paid the filing fees; and requested "court process continuance."   Response to Order Denying motion to proceed under 28 USC § 1915 at 1, filed

---

[1]  Because Judge Garza filed a report and recommendation for the Court's review, and in light of the issue presented in the ARD, whether denial of a motion under 42 U.S.C. § 2000e-5(f)(1) requires dismissal, as § 1915(e) would if the motion were brought under the *in forma pauperis* statute, the Court will review *de novo* the ARD as to this limited issue.

October 31, 2012 (Doc. 14).   Subsequently, on February 19, 2013, by and through her attorneys --

the Pia Gallegos Law Firm, P.C. and APNLAW, LLC -- Al-Villar filed her Amended Complaint.

See Doc. 15.

### RELEVANT LAW REGARDING MOTIONS TO PROCEED IN FORMA PAUPERIS

"The federal *in forma pauperis* statute, codified at 28 U.S.C. § 1915, allows an indigent

litigant to commence a civil or criminal action in federal court without paying the administrative

costs of proceeding with the lawsuit."   Denton v. Hernandez, 504 U.S. 25, 27 (1992).   Section

1915(a) of Title 28 of the United States Code provides:

> [A]ny court of the United States may authorize the commencement, prosecution or
> defense of any suit, action or proceeding, civil or criminal, or appeal therein,
> without prepayment of fees or security therefor, by a person who submits an
> affidavit that includes a statement of all assets such prisoner possesses that the
> person is unable to pay such fees or give security therefor.

28 U.S.C. § 1915(a). To prove inability to pay court costs and fees, the Supreme Court of the

United States has held: "We think an affidavit is sufficient which states that one cannot because of

his poverty 'pay or give security for the costs . . . and still be able to provide' himself and

dependents 'with the necessities of life.'"   Rowland v. California Men's Colony, Unit II Men's

Advisory Council, 506 U.S. 194, 203 (1993)(quoting Adkins v. E.I. DuPont de Nemours & Co.,

335 U.S. 331, 339 (1948)).   Although Congress' language throughout 28 U.S.C. § 1915

sometimes refers to the movant as prisoner or as person, the United States Court of Appeals for the

Tenth Circuit has noted that "despite the statute's use of the phrase 'prisoner possesses,' the

affidavit requirement applies to all persons requesting leave to proceed I[n] F[orma] P[auperis]."

Lister v. Dep't of Treasury, 408 F.3d at 1312 (quoting Martinez v. Kristi Kleaners, Inc., 364 F.3d

1305, 1306 n.1 (11th Cir. 2004)).

Professor Stephen M. Feldman notes that 28 U.S.C. § 1915 was enacted to give the force of law to the idea, traceable as far back as the Magna Carta in England, that the indigent should have access to the courts:

> [T]he idea that the poor should have access to the courts can be traced as far back as the Magna Carta in England. . . . Congress, however, did not pass a statute until 1892 to enable indigents to institute actions in the federal courts. The House Report struck the keynote for that first federal in forma pauperis statute: "Will the Government allow its courts to be practically closed to its own citizens, who are conceded to have valid and just rights, because they happen to be without the money to advance pay to the tribunals of justice?"
>
> The main provision of the modern federal in forma pauperis statute, 28 U.S.C. § 1915(a), enables indigents to file civil actions in the federal courts without paying a filing fee. Thus, the federal courts are at least theoretically open to even the most impoverished litigants

Stephen M. Feldman, Indigents in the Federal Courts: The in Forma Pauperis Statute-Equality and Frivolity, 54 Fordham L. Rev. 413, 413-14 (1985)(footnotes omitted). Similarly, the Supreme Court has noted: "The federal *in forma pauperis* statute, enacted in 1892 and presently codified as 28 U.S.C. § 1915, is designed to ensure that indigent litigants have meaningful access to federal courts." Neitzke v. Williams, 490 U.S. 319, 324 (1989)(citing Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 342-43 (1948)).

Section 1915 includes a provision allowing for possible appointment of an attorney to represent the party proceeding in forma pauperis: "The court may request an attorney to represent any person unable to afford counsel."   28 U.S.C. § 1915(e)(1).   In considering whether to appoint counsel, the district court should take into account the following factors: "the merits of the litigant's claims, the nature of the factual issues raised in the claims, the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims."   Rucks v. Boergermann, 57 F.3d 978, 979 (10th Cir. 1995)(quoting Williams v. Meese, 926 F.2d 994, 996 (10th Cir.

1991)).  "[T]he district court has broad discretion to appoint counsel for indigents under 28 U.S.C. § 1915(d), and its denial of counsel will not be overturned unless it would result in fundamental unfairness impinging on due process rights."  Williams v. Meese, 926 F.2d 994, 996 (10th Cir. 1991)(quoting Maclin v. Freake, 650 F.2d 885, 886 (7th Cir. 1981)).

In 1996, when Congress enacted the Prison Litigation Reform Act ("PLRA") as part of the Omnibus Consolidated Appropriations Act of 1996, Pub. L. 103-134, 110 Stat 1321 (1991), "Congress . . . placed a series of controls on prisoner suits, constraints designed to prevent sportive filings in federal court."  Skinner v. Switzer, 131 S. Ct. 1289, 1299 (2011). The Supreme Court in Neitzke v. Williams also recognized that, because the public bears the burden of paying the filing fees and court costs for litigants proceeding in forma pauperis, and because concerns about cost do not therefore dissuade litigants proceeding in forma pauperis from filing multiple lawsuits, Congress intended to place strict constraints on a litigant's ability to proceed under 28 U.S.C. § 1915.  "Congress recognized [] that a litigant . . . lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.  To prevent such abusive . . . § 1915(d) authorizes federal courts to dismiss a claim . . . 'if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.'"  Neitzke v. Williams, 490 U.S. at 325 (quoting 28 U.S.C. § 1915(d)).  At the time that the Supreme Court decided Neitzke v. Williams, Congress had not yet enacted the PLRA.

Congress' amendments to Section 1915 in the PLRA took away the language authorizing courts to dismiss the action, and moved language otherwise existing in the statute to create subsection (e), which provides:

(e)(1) The court may request an attorney to represent any person unable to afford counsel.

(**2**) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that --

> (**A**) the allegation of poverty is untrue; or

> (**B**) the action or appeal --

>> (**i**) is frivolous or malicious;

>> (**ii**) fails to state a claim on which relief may be granted; or

>> (**iii**) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e).   Thus, if a plaintiff brings a motion to proceed in forma pauperis and the district court finds that the plaintiff's "allegation of poverty is untrue," 28 U.S.C. § 1915(e) requires the court to dismiss the case.   28 U.S.C. § 1915(e)(2).   See Lister v. Dep't of Treasury, 408 F.3d at 1312 ("[T]o succeed on a motion to proceed IFP, the movant must show a financial inability to pay the required filing fees, as well as the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised in the action.").   The Tenth Circuit, recognizing that the PLRA made dismissal of a motion to proceed in forma pauperis a dispositive matter, has held that magistrate judges cannot enter an order denying plaintiff in forma pauperis status.   See Lister v. Dep't of Treasury, 408 F.3d at 1312 ("[D]enial of [motion to proceed in forma pauperis] is the functional equivalent of an involuntary dismissal and is outside the scope of a magistrate's authority.")(quoting Woods v. Dahlberg, 894 F.2d 187 (6th Cir.1990)).

## RELEVANT LAW REGARDING A REQUEST TO PROCEED UNDER TITLE VII WITHOUT PAYING COURT COSTS AND FEES

Section 200e-5 of Title 42 of the United States Code provides that, "[u]pon application by the complainant and in such circumstances as the court may deem just, the court may appoint an

attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security." 42 U.S.C. § 2000e-5(f)(1).  The Tenth Circuit has held that, because of the substantial similarity between 42 U.S.C. § 2000e-5(f)(1) and 28 U.S.C. § 1915(a), the district court's determination to grant leave to proceed without fees is the same under both 42 U.S.C. § 2000e-5(f)(1) and 28 U.S.C. § 1915(a).  Burns v. Veterans Admin., No. 98-5069, 162 F.3d 1172, 1998 WL 704704, at *1 (10th Cir. Oct. 5, 1998)(unpublished).[2]

In Burns v. Veterans Admin., where the plaintiff brought a lawsuit requesting compensation for violation of his civil rights based on the denial of veterans' benefits, the Tenth Circuit noted that the suit did not appear to properly fit under Title VII, and thus his application to proceed without paying costs and fees under 42 U.S.C. § 2000e-5(f)(1), rather than under 28 U.S.C. § 1915, also did not appear proper.  See 1998 WL 704704, at *1.  The Tenth Circuit concluded, however:

> Even liberally construing Mr. Burns' pro se filings as stating a Bivens type of action, however, see Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 . . . (1971), his ability to proceed in forma pauperis still would be governed by the discretionary standard under 28 U.S.C. § 1915.  Thus, the outcome of his attempt to proceed without payment of fees would not differ . . . ."

1998 WL 704704, at *1 (emphasis added).  The Tenth Circuit reasoned:

---

[2] Burns v. Veterans Admin. is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . .  However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision."  United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court finds that Burns v. Veterans Admin. and the other unpublished opinions to which the Court cites in this memorandum opinion and order have persuasive value with respect to material issues, and will assist the Court in its disposition of this case.

Under 42 U.S.C. § 2000e-5(f)(1), a court may, "[u]pon application by the complainant and in such circumstances as the court may deem just, . . . authorize the commencement of [an] action [under this section] without the payment of fees, costs, or security." The language of this provision is substantially similar to that of the broader general statute governing proceedings in forma pauperis, 28 U.S.C. § 1915(a), under which a court may authorize the commencement of "any" suit "without prepayment of fees or security" by a person who submits an affidavit stating his or her inability to pay.

The decision to grant or deny in forma pauperis status under § 1915 lies within the sound discretion of the trial court. Cross v. General Motors Corp., 721 F.2d 1152, 1157 (8th Cir.1983) . . . . The language of § 2000e-5(f)(1) ("in such circumstances as the court may deem just") reflects a similarly discretionary standard for granting a Title VII plaintiff leave to file suit without payment of fees.

Burns v. Veterans Admin., 1998 WL 704704, at *1 (brackets in original).

In deciding whether to appoint counsel under 42 U.S.C. § 2000e-5(f)(1), however, courts, including the Tenth Circuit, have treated such a request as distinct from the request of a party proceeding in forma puaperis under 28 U.S.C. § 1915.   In Castner v. Colo. Springs Cablevision, 979 F.2d 1417, 1422 (10th Cir. 1992), the Tenth Circuit reasoned that, because of the different language used in the two statutes, the two should be distinguished.  See Castner v. Colorado Springs Cablevision, 979 F.2d 1417, 1422 n.2 (concluding that a request for appointment of an attorney under 42 U.S.C. § 2000e-5(f)(1) "must be distinguished from the more general authorization found in 28 U.S.C. § 1915(d), which allows courts to request counsel to represent indigent civil litigants").  The Tenth Circuit thus held that a different standard governs the determination whether to appoint counsel under § 2000e-5(f)(1), requiring a district court to analyze the following factors: "(1) plaintiff's ability to afford counsel; (2) plaintiff's diligence in searching for counsel; and (3) the merits of plaintiff's case."  979 F.2d at 1422.  The Tenth Circuit also noted that the special consideration which Congress gave to Title VII plaintiffs in enacting 42 U.S.C. § 2000e-5(f)(1) should guide, at least in part, the determination whether to

appoint counsel:

> The decision whether to appoint counsel requires accommodation of two competing considerations. First, the court must consider Congress's "special . . . concern with legal representation in Title VII actions." Jenkins[ v. Chemical Bank], 721 F.2d [] [876,] 879 [(2d Cir.1983)]. In enacting the attorney appointment provision in the Civil Rights Act of 1964 and later reaffirming the importance of that provision in the legislative history of the Equal Employment Opportunity Act of 1972, Congress demonstrated its awareness that Title VII claimants might not be able to take advantage of the federal remedy without appointed counsel. As explained in House Report No. 92-238:
>
>> By including this provision in the bill, the committee emphasizes that the nature of Title VII actions more often than not pits parties of unequal strength and resources against each other. The complainant, who is usually a member of a disadvantaged class, is opposed by an employer who not infrequently is one of the nations's [sic] major producers, and who has at his disposal a vast array of resources and legal talent.
>
> H.R.Rep. No. 238, 92d Cong., 2d Sess., reprinted in 1972 U.S.C.C.A.N. 2137, 2148. The court, therefore, must give "serious consideration" to a plaintiff's request for appointed counsel in a Title VII action. Jenkins, 721 F.2d at 879; see also Poindexter[ v. FBI], 737 F.2d [] [1173,] 1183 [(D.C.Cir.1984)]("[C]ourts have an obligation to consider requests for appointment with care ... remain[ing] mindful that appointment of an attorney may be essential for a plaintiff to fulfill 'the role of 'a private attorney general' vindicating a policy 'of the highest priority.'")(quoting New York Gaslight Club, Inc. v. Carey, 447 U.S. 54, 63 . . . (1980)).

Castner v. Colo. Springs Cablevision, 979 F.2d at 1421.   Similarly, in Poindexter v. FBI, the

United States Court of Appeals for the D.C. Circuit held that Congress provided courts' ability to

appoint an attorney under § 2000e-5(f)(1) to protect not only indigent plaintiffs, but also plaintiffs

of limited means:

> [T]he appointment provision is primarily intended to protect plaintiffs with limited economic means. In evaluating the plaintiff's ability to afford counsel, a court should not insist that a plaintiff be destitute, nor should it demand as substantial a showing as that required to proceed in forma pauperis. Given Congress' concern about the financial burden resulting from attorneys' fees, appointment surely should not be refused because of a plaintiff's income or assets if payment of fees would jeopardize the plaintiff's ability to maintain the necessities of life.

Poindexter v. FBI, 737 F.2d at 1186 (emphasis added)(footnotes omitted).   In Luna v. Int'l Ass'n of Machinists & Aerospace Workers Local # 36, 614 F.2d 529 (5th Cir. 1980), a case upon which the Tenth Circuit relied in Castner v. Colo. Springs Cablevision, the United States Court of Appeals for the Fifth Circuit held that appointment of counsel was appropriate when the plaintiff's retirement income and "meager assets[] could not allow him to support his family of six and to hire counsel for this litigation."   614 F.2d at 531.   The Fifth Circuit overturned the district court's refusal to appoint the plaintiff counsel, noting: "[W]e emphasize that the district judge should have displayed more sensitivity and flexibility in dealing with someone as ill-suited for managing a pro se suit as Luna, an industrial worker with only a limited ability to speak English."   Luna v. Int'l Ass'n of Machinists & Aerospace Workers Local # 36, 614 F.2d at 531.

## LAW REGARDING PROPOSED FINDINGS AND RECOMMENDATIONS

District courts may refer dispositive motions to a magistrate judge for a recommended disposition.   See Fed. R. Civ. P. 72(b)(1) ("A magistrate judge must promptly conduct the required proceedings when assigned, without the parties' consent, to hear a pretrial matter dispositive of a claim or defense . . . .").   Rule 72(b)(2) governs objections: "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations."   Finally, when resolving objections to a magistrate judge's proposal, "the district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.   The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."   Fed. R. Civ. P. 72(b)(3).   Similarly, 28 U.S.C. § 636 provides:

-12-

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.   A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.   The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1)(C).

"The filing of objections to a magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- that are at the heart of the parties' dispute."   United States v. One Parcel of Real Property, With Buildings, Appurtenances, Improvements, and Contents, 73 F.3d 1057, 1059 (10th Cir. 1996)("One Parcel")(quoting Thomas v. Arn, 474 U.S. 140, 147 (1985)).   As the United States Court of Appeals for the Tenth Circuit has noted, "the filing of objections advances the interests that underlie the Magistrate's Act, including judicial efficiency."   One Parcel, 73 F.3d at 1059 (citing Niehaus v. Kan. Bar Ass'n, 793 F.2d 1159, 1165 (10th Cir. 1986); United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981)).

The Tenth Circuit held "that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."   One Parcel, 73 F.3d at 1060.   "To further advance the policies behind the Magistrate's Act, [the Tenth Circuit], like numerous other circuits, have adopted 'a firm waiver rule' that 'provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions.'"   One Parcel, 73 F.3d at 1059 (citations omitted).   In addition to requiring specificity in objections, the Tenth Circuit has stated that "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived."   Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996).   See United States v. Garfinkle, 261 F.3d 1030, 1030-31 (10th Cir.

2001)("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived.").   In an unpublished opinion, the Tenth Circuit stated that "the district court correctly held that [a petitioner] had waived [an] argument by failing to raise it before the magistrate."   <u>Pevehouse v. Scibana</u>, 229 F. App'x 795, 796 (10th Cir. 2007)(unpublished).[3]

In <u>One Parcel</u>, the Tenth Circuit, in accord with other courts of appeals, expanded the waiver rule to cover objections that are timely but too general.   <u>See</u> <u>One Parcel</u>, 73 F.3d at 1060. The Supreme Court of the United States -- in the course of approving the United States Court of Appeals for the Sixth Circuit's use of the waiver rule -- noted:

> It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a <i>de novo</i> or any other standard, when neither party objects to those findings.   The House and Senate Reports accompanying the 1976 amendments do not expressly consider what sort of review the district court should perform when no party objects to the magistrate's report. <u>See</u> S. Rep. No. 94-625, pp. 9-10 (1976) (hereafter Senate Report); H. R. Rep. No. 94-1609, p. 11 (1976), U.S. Code Cong. & Admin. News 1976, p. 6162 (hereafter House Report).   There is nothing in those Reports, however, that demonstrates an intent to require the district court to give any more consideration to the magistrate's report than the court considers appropriate.   Moreover, the Subcommittee that drafted and held hearings on the 1976 amendments had before it the guidelines of the Administrative Office of the United States Courts concerning the efficient use of magistrates.   Those guidelines recommended to the district courts that "[w]here a magistrate makes a finding or <u>ruling</u> on a motion or an issue, his determination should become that of the district court, unless specific objection is filed within a reasonable time."   <u>See</u> Jurisdiction of United States Magistrates, Hearings on S. 1283 before the Subcommittee on Improvements in Judicial Machinery of the

---

[3] <u>Pevehouse v. Scibana</u> is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.   <u>See</u> 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").   The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . .   However, if an unpublished opinion . . .   has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision."   <u>United States v. Austin</u>, 426 F.3d 1266, 1274 (10th Cir. 2005).   The Court finds that <u>Pevehouse v. Scibana</u> has persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

Senate Committee on the Judiciary, 94th Cong., 1st Sess., 24 (1975) (emphasis added) (hereafter Senate Hearings).   The Committee also heard Judge Metzner of the Southern District of New York, the chairman of a Judicial Conference Committee on the administration of the magistrate system, testify that he personally followed that practice.   See id., at 11 ("If any objections come in, . . . I review [the record] and decide it.   If no objections come in, I merely sign the magistrate's order.").   The Judicial Conference of the United States, which supported the *de novo* standard of review eventually incorporated in § 636(b)(1)(C), opined that in most instances no party would object to the magistrate's recommendation, and the litigation would terminate with the judge's adoption of the magistrate's report.   See Senate Hearings, at 35, 37.   Congress apparently assumed, therefore, that any party who was dissatisfied for any reason with the magistrate's report would file objections, and those objections would trigger district court review.   There is no indication that Congress, in enacting § 636(b)(1)(C), intended to require a district judge to review a magistrate's report to which no objections are filed.   It did not preclude treating the failure to object as a procedural default, waiving the right to further consideration of any sort.   We thus find nothing in the statute or the legislative history that convinces us that Congress intended to forbid a rule such as the one adopted by the Sixth Circuit.

Thomas v. Arn, 474 U.S. at 150-52 (emphasis in original)(footnotes omitted).

The Tenth Circuit also noted, "however, that '[t]he waiver rule as a procedural bar need not be applied when the interests of justice so dictate.'"   One Parcel, 73 F.3d at 1060 (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)("We join those circuits that have declined to apply the waiver rule to a pro se litigant's failure to object when the magistrate's order does not apprise the pro se litigant of the consequences of a failure to object to findings and recommendations." (citations omitted)).   Cf. Thomas v. Arn, 474 U.S. at 154 (noting that, while "[a]ny party that desires plenary consideration by the Article III judge of any issue need only ask," a failure to object "does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard").   In One Parcel, the Tenth Circuit noted that the district judge had decided sua sponte to conduct a de novo review despite the lack of specificity in the objections, but the Tenth Circuit held that it would deem the issues waived on

appeal because it would advance the interests underlying the waiver rule.   See 73 F.3d at 1060-61 (citing cases from other circuits where district courts elected to address merits despite potential application of waiver rule, but circuit courts opted to enforce waiver rule).

Where a party files timely and specific objections to the magistrate judge's proposed findings and recommendation, "on [] dispositive motions, the statute calls for a *de novo* determination, not a *de novo* hearing."   United States v. Raddatz, 447 U.S. 667, 674 (1980). "[I]n providing for a '*de novo* determination' rather than *de novo* hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations."   United States v. Raddatz, 447 U.S. at 676 (quoting 28 U.S.C. § 636(b) and citing Mathews v. Weber, 423 U.S. 261, 275 (1976)).   The Tenth Circuit requires a "district court to consider relevant evidence of record and not merely review the magistrate judge's recommendation" when conducting a de novo review of a party's timely, specific objections to the magistrate's report.   In re Griego, 64 F.3d 580, 583-84 (10th Cir. 1995).   "When objections are made to the magistrate's factual findings based on conflicting testimony or evidence . . . .   the district court must, at a minimum, listen to a tape recording or read a transcript of the evidentiary hearing."   Gee v. Estes, 829 F.2d 1005, 1008-09 (10th Cir. 1987).

A district court must "clearly indicate that it is conducting a de novo determination" when a party objects to the magistrate's report "based upon conflicting evidence or testimony."   Gee v. Estes, 829 F.2d at 1009.   On the other hand, a district court fails to meet the requirements of 28 U.S.C. § 636(b)(1) when it indicates that it gave "considerable deference to the magistrate's order."   Ocelot Oil Corp. v. Sparro Indus., 847 F.2d 1458, 1464 (10th Cir. 1988).   A district court need not, however, "make any specific findings; the district court must merely conduct a *de novo*

-16-

review of the record." Garcia v. City of Albuquerque, 232 F.3d 760, 766 (10th Cir. 2000).

"[T]he district court is presumed to know that de novo review is required. . . .   Consequently, a

brief order expressly stating the court conducted de novo review is sufficient." Northington v.

Marin, 102 F.3d 1564, 1570 (10th Cir. 1996)(citing In re Griego, 64 F.3d at 583-84).   "[E]xpress

references to de novo review in its order must be taken to mean it properly considered the pertinent

portions of the record, absent some clear indication otherwise." Bratcher v. Bray-Doyle Indep.

Sch. Dist. No. 42, 8 F.3d 722, 724 (10th Cir. 1993).   The Tenth Circuit has previously held that a

district court properly conducted a de novo review of a party's evidentiary objections when the

district court's "terse" order contained one sentence for each of the party's "substantive claims"

and did "not mention his procedural challenges to the jurisdiction of the magistrate to hear the

motion." Garcia v. City of Albuquerque, 232 F.3d at 766.   The Tenth Circuit has explained that

brief district court orders that "merely repeat the language of § 636(b)(1) to indicate its

compliance" are sufficient to demonstrate that the district court conducted a de novo review:

> It is common practice among district judges in this circuit to make such a statement
> and adopt the magistrate judges' recommended dispositions when they find that
> magistrate judges have dealt with the issues fully and accurately and that they could
> add little of value to that analysis.   We cannot interpret the district court's
> statement as establishing that it failed to perform the required de novo review.

In re Griego, 64 F.3d at 584.

Notably, because "Congress intended to permit whatever reliance a district judge, in the

exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and

recommendations," United States v. Raddatz, 447 U.S. at 676 (emphasis omitted), a district court

"may accept, reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate," 28 U.S.C. § 636(b)(1).   See Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42, 8 F.3d

at 724-25 (holding that the district court's adoption of the magistrate judge's "particular reasonable-hour estimates" is consistent with the de novo determination that 28 U.S.C. § 636(b)(1) and   United States v. Raddatz require).

Where no party objects to the magistrate judge's proposed findings and recommended disposition, the Court has, as a matter of course and in the interests of justice, reviewed the magistrate judge's recommendations.   In Pablo v. Soc. Sec. Admin., No. CIV 11-0132 JB/ACT, 2013 WL 1010401 (D.N.M. Feb. 27, 2013)(Browning, J.), the Plaintiff failed to respond to the magistrate judge's proposed findings and recommended disposition, and thus waived his right to appeal the recommendations, but the Court nevertheless conducted a review.   The Court generally does not, however, "review the PF&RD de novo, because the parties have not objected thereto, but rather review[s] the recommendations to determine whether they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion."   Pablo v. Soc. Sec. Admin., 2013 WL 1010401, at *4.   The Court, thus, does not determine independently what it would do if the issues had come before the Court first, when there is no objection, but rather adopts the proposed findings and recommended disposition where "[t]he Court cannot say that the Magistrate Judge's recommendation . . . is clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion."   Pablo v. Soc. Sec. Admin., 2013 WL 1010401, at *4.   See Alexandre v. Astrue, No. CIV 11-0384 JB/SMV, 2013 WL 1010439, at *4 (D.N.M. Feb. 27, 2013)(Browning, J.)("The Court rather reviewed the findings and recommendations of the Honorable Stephan M. Vidmar, United States Magistrate Judge, to determine if they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion.   The Court determines that they are not, and will therefore adopt the PFRD."); Trujillo v. Soc. Sec. Admin., No. CIV 12-1125 JB/KBM, 2013 WL

1009050, at *5 (D.N.M. Feb. 28, 2013)(Browning, J.)(adopting the proposed findings and conclusions, and noting that "[t]he Court did not review the ARD de novo, because Trujillo has not objected to it, but rather reviewed the . . . findings and recommendation to determine if they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion, which they are not."). This review, which is deferential to the magistrate judge's work when there is no objection, nonetheless provides some review in the interest of justice, and seems more consistent with the waiver rule's intent than no review at all or a full-fledged review. Accordingly, the Court considers this standard of review appropriate. See Thomas v. Arn, 474 U.S. at 151 ("There is nothing in those Reports, however, that demonstrates an intent to require the district court to give any more consideration to the magistrate's report than the court considers appropriate."). The Court is reluctant to have no review at all if its name is going at the bottom of the order adopting the magistrate judge's proposed findings and recommendations.

## ANALYSIS

Al-Villar's motion requesting permission to proceed without paying court costs and fees under 42 U.S.C. § 2000e-5(f)(1) is, in many respects, substantially similar to a motion for leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(a). The language that Congress uses in the two statutes is distinct, however, as § 2000e-5(f)(1) allows courts discretion to allow plaintiffs to proceed without paying court costs and fees in situations the court deems just, whereas § 1915(a) requires a finding that the plaintiff is unable to pay the fees and costs. Compare 42 U.S.C. § 2000e-5(f)(1), with 28 U.S.C. § 1915(a)(1). Accordingly, the United States Courts of Appeals, including the Tenth Circuit, have held that the district courts' inquiry into a request for appointment of counsel under § 2000e-5(f)(1) is distinct from the inquiry for a request for counsel

-19-

under the in forma pauperis statute under 28 U.S.C. § 1915(e)(1).   The denial of a request to

commence a proceeding without paying court costs and fees under 42 U.S.C. § 2000e-5(f)(1),

therefore, is distinct from a denial of a request to proceed in forma pauperis under 28 U.S.C. §

1915(a).   <u>See</u> 28 U.S.C. § 1915(e)(2).   While a magistrate judge cannot enter an order denying a

motion for leave to proceed in forma pauperis, and denial of a request to proceed in forma pauperis

makes dismissal mandatory, there is no similar requirement for dismissal under 42 U.S.C. §

2000e-5(f)(1).   A magistrate judge, therefore, can enter an order denying a 42 U.S.C. §

2000e-5(f)(1) motion to proceed without paying costs and fees.   Accordingly, upon reviewing

Judge Garza's recommendation, the Court cannot say that the recommendation is clearly

erroneous, arbitrary, obviously contrary to law, or an abuse of discretion.   The Court will thus

adopt the ARD.

**I.     AN ORDER DENYING AL-VILLAR'S REQUEST TO PROCEED WITHOUT PAYING COURT COSTS AND FEES UNDER 42 U.S.C. § 2000e-5(f)(1) IS SEPARATE AND DISTINCT FROM A MOTION TO PROCEED IN FORMA PAUPERIS UNDER 28 U.S.C. § 1915(a), AND THUS A MAGISTRATE JUDGE <u>CAN ENTER SUCH AN ORDER</u>.**

Al-Villar brings this lawsuit pursuant to 42 U.S.C. § 2000e-5(f)(1), which provides: "Upon

application by the complainant and in such circumstances as the court may deem just, the court

may appoint an attorney for such complainant and may authorize the commencement of the action

without the payment of fees, costs, or security." 42 U.S.C. § 2000e-5(f)(1).   Accordingly,

Al-Villar, in her Right to Request No Court Fees, Court Costs, or Other Security, states: "I intend

to use all of my rights to include[:] Court Appointed Attorney Representative, No Court Fees, No

Court Costs or Other Security."   Right to Request No Court Fees, Court Costs, or Other Security

at 1.   The Court concludes that the portion of a motion to proceed without paying court costs and

fees under § 2000e-5(f)(1) is distinct from a motion to proceed in forma pauperis under 28 U.S.C. § 1915(a).

On the one hand, the Tenth Circuit's analysis in <u>Burns v. Veterans Administration</u> counsels the Court to conclude that denial of a request to proceed without paying costs and fees under 42 U.S.C. § 2000e-5(f)(1) should effectively be equivalent to denying a request to proceed without paying fees and costs under 28 U.S.C. § 1915. The Tenth Circuit in <u>Burns v. Veterans Administration</u> reasoned that, based on the "substantial[] similar[ity]" of a request to proceed without paying costs and fees under 42 U.S.C. § 2000e-5(f)(1) to that of an in forma pauperis motion under 28 U.S.C. § 1519(a), courts should use the same standard of review under the provisions. 1998 WL 704704, at *1. The Tenth Circuit went further, concluding that whether a request is brought under 42 U.S.C. § 2000e-5(f)(1) or under 28 U.S.C. § 1519(a) does not affect the outcome of the request. <u>See Burns v. Veterans Admin.</u>, 1998 WL 704704, at *1 ("Even liberally construing [the] pro se filings as stating a <u>Bivens</u> type of action . . . . the outcome of [the] attempt to proceed without payment of fees would not differ . . . ."). To extend the Tenth Circuit's construction of 42 U.S.C. § 2000e-5(f)(1) with regard to the standard of review in <u>Burns v. Veterans Administration</u> to whether failure to show poverty requires dismissal, however, may be at some tension with the United States Courts of Appeals' holdings, including the Tenth Circuit's, which have held that the attorney-appointment provision § 2000e-5 requires an analysis separate from a request for an appointment of an attorney under 28 U.S.C. § 1915.

In <u>Castner v. Colorado Springs Cablevision</u>, for instance, the Tenth Circuit determined that, based on the language of the two statutes and Congress' special concerns regarding employment discrimination lawsuits, a request for appointment of counsel under § 2000e-5(f)(1)

-21-

should be analyzed separately from that of a similar request under 28 U.S.C. § 1915.  See 979 F.2d at 1420.  Specifically, the Tenth Circuit held that "[t]he inquiry into a plaintiff's financial inability [to afford to pay counsel] is less stringent that that required for the general in forma pauperis statute."  979 F.2d at 1420.  Whereas the inquiry under 28 U.S.C. § 1915 for whether to appoint counsel for an in-forma-pauperis petitioner does not take into consideration the petitioner's financial resources -- because the court has already determined that the petitioner to be in poverty -- the Tenth Circuit's inquiry under 42 U.S.C. § 2000e-5(f)(1) includes as a factor the plaintiff's ability to pay counsel.  Compare Rucks v. Boergermann, 57 F.3d at 979 (listing as the factors for appointment of counsel under 28 U.S.C. § 1915: "the merits of the litigant's claims, the nature of the factual issues raised in the claims, the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims"), with Castner v. Colo. Springs Cablevision, 979 F.2d at 1420 (listing as the factors for appointment of counsel under 42 U.S.C. § 2000e-5(f)(1): "(1) plaintiff's ability to afford counsel; (2) plaintiff's diligence in searching for counsel; and (3) the merits of plaintiff's case").  The Tenth Circuit's decision to omit inquiry into plaintiff's ability to afford counsel as a factor for appointment under the in forma pauperis statute's inquiry makes sense, given that the in forma pauperis statute "allows an indigent litigant to commence a civil or criminal action in federal court without paying the administrative costs of proceeding with the lawsuit."  Denton v. Hernandez, 504 U.S. at 27 (emphasis added).

Congress' intent in allowing courts to appoint counsel to represent plaintiffs bringing a Title VII lawsuit under § 2000e-5 was not to provide counsel just to indigent plaintiffs, but was rather to allow plaintiffs, who generally have less of a means to adequate resources and legal talent, have a fighting chance in their Title VII lawsuits:

> [T]he nature of Title VII actions more often than not pits parties of unequal strength
> and resources against each other.   The complainant, who is usually a member of a
> disadvantaged class, is opposed by an employer who not infrequently is one of the
> nations's [sic] major producers, and who has at his disposal a vast array of
> resources and legal talent.

Castner v. Colo. Springs Cablevision, 979 F.2d at 1421 (quoting H.R.Rep. No. 238, 92d Cong., 2d

Sess., reprinted in 1972 U.S.C.C.A.N. at 2148).   Thus, as the D.C. Circuit noted: "[T]he

appointment provision is primarily intended to protect plaintiffs with limited economic means. . . .

[The court] should not insist that a plaintiff be destitute, nor should it demand as substantial a

showing as that required to proceed in forma pauperis."   Poindexter v. FBI, 737 F.2d at 1186

(emphasis added).

Al-Villar speaks specifically to what Congress had in mind in recognizing that Title VII

actions often pit parties of unequal strength and resources against each other: "I have no shame in

stating that I was not receiving Equal Pay For Equal Work and cannot afford an attorney. . . . I

intend to use all of my rights to include . . . No Court Fees, No Court Costs or Other Security."

Right to Request No Court Fees, Court Costs or Other Security at 1.   Moreover, in the House

Report accompanying the bill enacting § 20003-5(f)(1), Congess pointed out that this particular

subsection was designed to protect "[t]he complainant, who is usually a member of a

disadvantaged class, [and] is opposed by an employer who not infrequently is one of the nations's

[sic] major producers, and who has at his disposal a vast array of resources . . . ."   Castner v. Colo.

Springs Cablevision, 979 F.2d at 1421 (quoting H.R.Rep. No. 238, 92d Cong., 2d Sess., reprinted

in 1972 U.S.C.C.A.N. at 2148).   Given that Al-Villar is "a woman . . . [and] transgender," Right to

Request No Court Fees, Court Costs or Other Security at 1, up against the no doubt vast resources

of the United States Air Force, Al-Villar's motion again speaks directly to Congress' intent.

-23-

Right to Request No Court Fees, Court Costs or Other Security at 1.

The Tenth Circuit's reliance on the differing language that Congress used in § 2000e-5(f)(1) compared with that of 28 U.S.C. § 1915 in Castner v. Colorado Springs Cablevision counsels in favor of distinguishing a motion to commence a lawsuit without costs and fees brought specifically under § 2000e-5(f)(1)'s provisions from that of a motion to proceed in forma pauperis under § 1915(a).   Section 2000e5(f)(1) provides that, "[u]pon application by the complainant and in such circumstances as the court may deem just, the court . . . may authorize the commencement of the action without the payment of fees, costs, or security."   42 U.S.C. § 2000e-5(f)(1) (emphasis added).   Section 1915(a), on the other hand, provides that

> any court . . . may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor.

28 U.S.C. § 1915(a)(1) (emphasis added). In § 2000e-5(f)(1) Congress does not require a complainant to provide an affidavit including a statement of his or her assets, or to state that the complainant is unable to pay court costs and fees.   Rather, Congress grants courts authorization to allow a party to commence a lawsuit in situations in which the courts deem it just to do so.   This authorization comports with the Tenth Circuit's recognition in Castner v. Colorado Springs Cablevision that, when considering an application pursuant to § 2000e-5(f)(1), "the court must consider Congress's 'special . . . concern with legal representation in Title VII actions.'"   979 F.2d at 1421 (quoting Jenkins v. Chemical Bank, 721 F.2d at 879).   The Court concludes, thus, that Congress' purpose in enacting 42 U.S.C. § 2000e-5(f)(1) was not to allow only indigent plaintiffs to proceed to court in Title VII actions without paying for an attorney, but to include

"plaintiffs with limited economic means" in the class of persons who could so proceed. Poindexter v. FBI, 737 F.2d at 1186.

The absence of language similar to the PLRA's recent amendment to the in forma pauperis statute, requiring mandatory dismissal of a lawsuit where the party's allegation of poverty is untrue, see 28 U.S.C. § 1915(e)(2)(A), from 42 U.S.C. § 2000e-5(f)(1) also counsels in favor, especially in this case, in treating the two statutes separately. At the time she filed her motion, Al-Villar was proceeding pro se, but she was not, and has never during the course of this litigation been, a prisoner. Thus, automatic dismissal of her case here does not further Congress or the federal judiciary's interest in preventing the "flood of frivolous litigation," which was Congress' purpose in the PLRA for adding the mandatory dismissal requirement to the in forma pauperis statute. Neitzke v. Williams, 490 U.S. at 325.

Moreover, if Congress, in requiring mandatory dismissal of a party's case when a court finds that the allegation of poverty is untrue, sought automatic dismissal as punishment for litigants who misrepresented poverty or resources to the court, this case would be a poor exemplar of such a policy. Al-Villar has not asserted poverty. She rather sought "to use all of [her] rights," including commencing the suit without paying court costs and fees, for which § 2000e-5(f)(1) specifically provides, without regard to poverty or even limited economic resources. Notably, she provided an affidavit including a statement of her assets only when Judge Garza's Order to Show Cause prompted her to do so. See Response to Order to Show Cause at 1 (stating that she "requests free process . . . as per her right to request . . . ."). Then, after reading Judge Garza's recommendation in the ARD that Al-Villar's motion be denied as she can reasonably pay the court costs and fees, Al-Villar paid the filing fees. See Filing fee: $350.00, filed October 31,

2012 (Doc. 13); Response to Order Denying Motion to Proceed under 28 USC 1915 at 1

("Al-Villar as per US District Court Fee Schedule submits . . . the amount of Three Hundred Fifty

Dollars . . . . [and] requests court process continuance.").   To punish Al-Villar now by dismissing

the lawsuit, requiring her to re-file, and necessitating another filing fee, in light of §

2000e-5(f)(1)'s omission of language requiring inability to pay fees or poverty, would not serve

any rational policy, but would be punitive.   The Court therefore concludes that a Title VII

plaintiff's application to commence a lawsuit without paying court costs and fees under 42 U.S.C.

§ 2000e-5(f)(1) is distinct and separate from an indigent party's motion to proceed in forma

pauperis under 28 U.S.C. § 1915(a), although, if the application relies on indigency, the

applications should be subject to the same review, and have the same resolution.

        While this conclusion may, at first blush, appear somewhat at odds with the Tenth Circuit's

decision in Burns v. Veterans Administration, closer examination of the analysis in Burns v.

Veterans Administration proves consistent with the Court's conclusion.   At issue in Burns v.

Veterans Administration was the standard of review for denial of authorization under §

2000e-5(f)(1) to proceed without paying court costs and fees, not whether such a motion should be

construed as a 28 U.S.C. § 1915(a) motion to proceed in forma pauperis.   See 1998 WL 704704,

at *1.   The Tenth Circuit concluded that, because "[t]he language of [42 U.S.C. § 2000e-5(f)(1)]

is substantially similar to that of the broader general statute proceedings in forma pauperis," a

district court's decision whether to allow a party to proceed without paying costs and fees is

discretionary under both statutes.   1998 WL 704704, at *1 (emphasis added).   The Tenth Circuit

thus held: "The language of § 2000e(5)(f)(1) . . . reflects a similarly discretionary standard . . .

[and] the outcome" of the motions "would not differ."   Burns v. Veterans Admin., 1998 WL

-26-

704704, at *1.

Here, the conclusion that the two statutes are distinct, and require a distinct analysis, is in recognition of the Tenth Circuit's recognition in Castner v. Colorado Springs Cablevision that there is a different economic threshold -- indigency for 28 U.S.C. § 1915 and limited economic means for 42 U.S.C. § 2000e-5(f)(1) -- whether to grant a request for a court-appointed-attorney under the two statutes.  The Court's recognition that a motion to proceed without paying court costs and fees under the two statutes calls for different inquiries is not inconsistent with the Tenth Circuit's holding in Burns v. Veterans Administration.  The Tenth Circuit has already decided that the substantially similar language in both of the statutes reflects Congress' recognition of "a similarly discretionary standard" that courts are to use to decide whether to allow parties to proceed without paying court costs and fees.  1998 WL 704704, at *1.  Congress does not provide factors or a burden of proof in either statute.  The Tenth Circuit stated that "[t]he decision to grant or deny in forma pauperis status under § 1915 lies within the sound discretion of the trial court."  Burns v. Veterans Admin., 1998 WL 704704, at *1.  It would seem likewise that it is also within the court's sound discretion to grant, or "deem just," 42 U.S.C. § 2000e-5(f)(1), a Title VII plaintiff's request to commence his or her lawsuit without paying court costs or fees.  Thus, regardless whether Al-Villar brought her request to proceed without paying court costs or fees here under § 2000e-5(f)(1) or under § 1915(a), because her affidavit shows that she "has had, and will continue to have, a steady stream of income that is more than enough to cover her monthly expenses . . . and plenty of money in her checking account to pay for the filing fees," ARD at 5, the "outcome of [her] attempt to proceed without payment of fees would not differ . . . ," Burns v.

Veterans Admin., 1998 WL 704704, at *1.[4]  Thus, if the motion, under both statues, rests on allegations of indigence, the result would be the same.

While it might be argued that treating the two statutes distinct will open the gates to a "'flood of frivolous litigation,'" Nietzke v. Williams, 490 U.S. at 325, by allowing plaintiffs to contravene the stringent requirements and harsh consequences that Congress put in place in 28 U.S.C. § 1915 for failure to meet those requirements, the Court does not believe that this danger is a strong possibility.  While a party may physically file a Title VII lawsuit, as the Tenth Circuit noted in EEOC v. W.H. Braum, Inc., 347 F.3d 1192 (10th Cir. 2003), to properly bring a Title VII lawsuit, a plaintiff must have already taken the case to the United States Equal Employment Opportunities Commission:

> Although the EEOC originally was involved only in conciliation efforts, with the enactment of the Equal Employment Opportunity Act of 1972, "Congress established an integrated, multi-step enforcement procedure culminating in the EEOC's authority to bring a civil action in a federal court."  [Occidental Life Ins. Co. v. EEOC, 432 U.S. 355, 359 (1977)].  The process is initiated when an aggrieved party first files a charge with the EEOC alleging that an employer engaged in an unlawful employment practice.  42 U.S.C. § 2000e-5(b).  The charge must be filed with the EEOC within 180 days of the challenged action.  Id. § 2000e-5(e)(1).  The statute provides for an extended 300-day filing period "in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief."  Id.; see Smith v. Oral Roberts Evangelistic Ass'n, Inc., 731 F.2d 684, 687-88 (10th Cir. 1984).  The EEOC serves notice on the employer within ten days of the filing.  § 2000e-5(b).

---

[4]The Tenth Circuit does not mention in Burns v. Veterans Admin. whether the district court dismissed the plaintiff's lawsuit.  In affirming the district court's denial of the plaintiff's appeal, the Tenth Circuit states only: "For the above reasons, we AFFIRM the district court's denial of Mr. Burns' Application for Leave to File Without Payment of Fees, DENY the petition for mandamus, and DISMISS the appeal."  1998 WL 704704, at *2.  The disposition of Burns v. Veterans Admin., therefore, does not offer insight whether denial of a request to commence a lawsuit without paying court costs and fees under 42 U.S.C. § 2000e-5(f)(1) requires dismissal of a case, like that of denial of a request to proceed in forma puaperis under 28 U.S.C. § 1915 where the allegation of poverty is untrue.  See 28 U.S.C. § 1915(e)(2)(A).

> Once a charge is filed, the EEOC investigates the charges. Id.  . . .   [I]f a
>
> charge filed with the Commission . . . is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge . . . , the Commission has not filed a civil action under this section . . . , or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge.

[42 U.S.C. § 2000e-5(f)(1)] (emphasis added).   The notice by the Commission to the aggrieved individual is commonly known as a "right-to-sue" letter.   [EEOC v.] Waffle House,[ Inc.,] 534 U.S. [279,] 291 . . . [(2002)].

EEOC v. W.H. Braum, Inc., 347 F.3d at 1196 (footnote omitted).

Given that the plaintiff's receipt of a "right-to-sue" letter is a condition precedent to commencing a Title VII lawsuit under § 2000e-5(f)(1), therefore, the Court's conclusion that denial of a motion to proceed without paying court costs and fees brought under § 2000e-5(f)(1) does not require dismissal of the case does not likely threaten Congress' concern in enacting the PLRA, and in requiring dismissal of cases requesting to proceed in forma pauperis under § 1915 in certain circumstances.   Just as the Tenth Circuit in Burns v. Veterans Admininstration noted that "42 U.S.C. § 2000e . . . does not appear to be the proper vehicle for redress of [the plaintiff's] claims for compensation . . . for violation of civil rights . . . ," and proceeded to uphold the district court's denial of his application to proceed without paying fees and costs, it can often be discerned from the face of a complaint whether an action is, in reality, properly a Title VII action.   Where the face of a complaint discloses that the action is not properly a Title VII complaint, a district court is still free to, and should, as Judge Garza did in Al-Villar's case, construe the pro se plaintiff's request to proceed without paying court costs and fees as a motion to proceed in forma

pauperis under § 1915(a).

The canons of statutory construction provide additional support for the Court's decision to treat at least one portion of a motion to commence a suit without court costs and fees under § 2000e-5(f)(1) separately from a motion to proceed in forma pauperis under § 1915(a).   Were the Court to conclude that the two motions are essentially the same, requiring the same showing of poverty to proceed under both, and concluding that denial of both requires dismissal, the Court would effectively be finding 42 U.S.C. § 2000e-5(f)(1) to be superfluous, something that the rules of construction do not favor.   See Corley v. United States, 556 U.S. 303, 314 (2009)("'A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant . . . .'")(quoting   Hibbs v. Winn, 542 U.S. 88, 101 (2004)); TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001)("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'")(quoting Duncan v. Walker, 533 U.S. 167, 174 (2001)).   On the one hand, before the PLRA in 1996, when Congress added the phrase "the court shall dismiss the case at any time if . . . the allegation of poverty is untrue . . . ," 28 U.S.C. § 1915(e)(2) (emphasis added), 42 U.S.C. § 2000e-(f)(1) had been in effect for twenty-four years, as it was enacted in 1972 as an amendment to the Civil Rights Act of 1964.

On the other hand, however, the in forma pauperis statute has been in place since 1859, allowing indigent plaintiffs access to the courts without paying costs and fees regardless of the cause of action alleged.   With the in forma puaperis statute in place, Congress enacted § 2000e-5(f)(1) in 1972, providing courts discretion to allow Title VII plaintiffs to proceed without paying costs and fees, and to appoint them attorneys, in cases in which the courts deem it just to do

so, not solely in cases in which the plaintiff is indigent.   The Court's interpretation is thus necessary to give effect to Congressional intent, and to give effect to "Congress's 'special concern with . . . Title VII actions.'"   Castner v. Colo. Springs Cablevision, 979 F.2d at 1421.   See Rumsfeld v. Forum for Academic & Institutional Rights, Inc., 547 U.S. 47, 57 (2006)(disagreeing with the parties' stipulated meaning given to the statute, reasoning with regard to its differing interpretation of the language: "Not only does the text support this view, but this interpretation is necessary to give effect to the Solomon Amendment's recent revision.").   There is no sound reason to find that Congress, in seeking to halt the flood of frivolous prisoner pro se cases by amending the in forma pauperis statute, which had been in place before Congress enacted § 2000e-5, also sought to stop cases by plaintiffs whom the EEOC had granted the right to sue under § 2000e-5(f)(1), without also amending that statute, unless the Title VII plaintiff was also relying on poverty to escape the requirement that he or she pay court costs and fees to commence the suit.

In sum, as the Tenth Circuit has held that inquiry into the "financial inability" to pay of a party requesting appointment of an attorney under § 2000e-5(f)(1) is "less stringent than that required for the general in forma pauperis statute," holding that "the court should examine the [] ability to pay counsel and still meet . . .   daily expenses," Castner v. Colo. Springs Cablevision, 979 F.2d at 1422, the Court concludes that the inquiry into the plaintiff's financial inability to pay under § 2000e-5(f)(1) is also less stringent than that under § 1915, and does not require a showing of poverty.   The Court thus concludes that a request to commence a lawsuit without paying court costs and fees under 42 U.S.C. § 2000e-5(f)(1), depending on the basis of the request, is distinct from a request to proceed in forma pauperis under 28 U.S.C. § 1915(a).

If the Title VII plaintiff does not plead indigence, the court uses Castner v. Colorado

Springs Cablevision's review standard; if the Title VII plaintiff alleges indigence, however, the Court must use the same review standard as it uses under 28 U.S.C. § 1915.   Only if the Title VII plaintiff relies solely on indigence, however, does § 1915 require that the Court dismiss the case when the allegation of indigence proves untrue.

Whereas the Tenth Circuit held in Lister v. Department of the Treasury that magistrate judges cannot deny a motion to proceed in forma pauperis, because 28 U.S.C. § 1915(e)(2)(A) then requires automatic dismissal of the case, here, because the requests are distinct as long as the request to commence the action is brought under 42 U.S.C. § 2000e-5(f)(1), and because § 2000e-5(f)(1) does not contain any language requiring or allowing dismissal of a case for denial of a motion to proceed without paying court costs and fees, the Court concludes that magistrate judges can deny a motion to proceed without paying costs and fees under 42 U.S.C. § 2000e-5(f)(1).

Even if, however, the denial of a motion under 42 U.S.C. § 2000e-5(f)(1) to proceed without paying court costs and fees requires dismissal of the case, the Court would not dismiss Al-Villar's case, because she paid the court costs and fees before the Court was able to make a finding under § 1915(e)(2)(A) that "the allegation of poverty is untrue."   See Filing fee, filed October 31, 2012 (Doc. 13).   Indeed, in no judicial officer has made that finding, because she did not allege poverty.   Judge Garza similarly did not make a finding that any allegation of poverty is untrue.   See generally ARD at 1-5.   This finding is a condition precedent to dismissing a case under § 1915(e)(2)(A) involving a motion to proceed in forma pauperis.   The Court, therefore, will not dismiss Al-Villar's case.

## II.    THE COURT WILL ADOPT JUDGE GARZA'S RECOMMENDATION AND WILL DENY AL-VILLAR'S REQUEST TO PROCEED WITHOUT PAYING COURT COSTS AND FEES.

Al-Villar has not filed any objections to the ARD.   The time for filing objections has now passed.   Accordingly, she has waived her right to seek the Court's de novo review of the ARD. See One Parcel, 73 F.3d at 1060.   The Court cannot soundly say that Judge Garza's recommendation to deny Al-Villar's request to proceed without paying court costs and fees, because it appears that she can pay the costs and fees, cover her monthly expenses, and maintain her standard of living, is clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion.   The Court will therefore adopt the ARD and will deny the Al-Villar's request to prosecute this case without paying court costs and other fees.

**IT IS ORDERED** that: (i) the Magistrate Judge's Analysis and Recommended Disposition, filed October 18, 2012 (Doc. 12), is adopted; and (ii) the Al-Villar's Right to Request No Court Fees, Court Costs, or Other Security, filed August 23, 2012 (Doc. 2), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Pia Gallegos
Albuquerque, New Mexico

-- and --

Amelia P. Nelson
APNLAW, LLC
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

-33-